UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2005-224

RICHARD YOUNG                                              PLAINTIFF

VS.                    MEMORANDUM OPINION AND ORDER

SEARS ROEBUCK & CO.                                       DEFENDANT


        This matter is before the court on defendant's motion to
reduce damages (Doc. #64) and motion for judgment as a matter of
law or, in the alternative, for a new trial (Doc. #65), as well
as plaintiff's motions for attorneys' fees (Doc. ##70, 86).

        The court heard oral argument in this matter on Friday, June
15, 2007.  Kelly Myers and Randy Freking represented the
plaintiff, and Theresa Gallion represented the defendant.  Also
present was plaintiff Richard Young.  Official court reporter
Joan Averdick recorded the proceedings.

### Procedural Background

        A jury trial was held in this matter from April 2 to April
5, 2007.  On April 5, 2007, the jury returned a verdict in
plaintiff's favor on his claim for unlawful retaliation under the
Family and Medical Leave Act, 29 U.S.C. § 2611 *et seq.* ("FMLA"),
and in defendant's favor on plaintiff's claim for age
discrimination.  (Doc. #60)  The jury awarded plaintiff $120,000
in back pay, $120,000 in front pay, and $110,000 in compensatory
damages.

By order dated April 10, 2007, the court held that, inasmuch as plaintiff had not prevailed on his claim for age discrimination, he was not entitled to recover damages for emotional harm because such compensatory damages are not available under the FMLA.  (Doc. #62)  The court also concluded that plaintiff was entitled to liquidated damages under the FMLA because defendant had not proven that it acted in good faith.  *See* 29 U.S.C. § 2617(a)(1)(A)(iii).  Finally, the court dismissed plaintiff's ERISA claim, finding that he had not proven that defendant's decision to terminate his employment had anything to do with his employee benefits.  (Doc. #62)

The court thus entered a judgment awarding plaintiff back pay of $120,000, plus applicable interest; front pay of $120,000, plus applicable interest; and liquidated damages of $120,000, plus applicable interest.  (Doc. #63)  The judgment also awarded plaintiff reasonable attorneys' fees and costs, to be determined upon application pursuant to the Joint Local Rules.

Defendant has now filed post trial motions challenging both the sufficiency of the evidence and the amount of damages awarded.  In turn, plaintiff has filed motions for attorneys' fees and costs.

*Analysis*

**A.    Motion for Judgment as a Matter of Law or For New Trial**

Defendant makes four arguments in support of its assertion that it is entitled to judgment as a matter of law or a new trial on plaintiff's FMLA claim: (1) that the verdict is against the weight of the evidence; (2) that the jury was wrongly and under-instructed; (3) that plaintiff's counsel's remarks in closing were improper and inflammatory; and (4) that a perception of judicial partiality may have tainted the proceedings.

**1.    Sufficiency of the Evidence**

The evidence adduced at trial was more than sufficient to support the jury's conclusion that plaintiff's use of FMLA leave to undergo knee surgery was a motivating factor in defendant's decision to terminate his employment.  Highly summarized, the evidence showed that plaintiff was a 30-year employee with a generally positive performance record who, almost immediately upon return from FMLA leave, was given a negative performance review and put on a "performance improvement plan."  He was then terminated just six months later.  The jury could have concluded that Edward Maunz, who was plaintiff's manager and the decision maker in his termination, was angered when plaintiff declined his request to reschedule the knee surgery until after the holiday season.  Maunz's remark that "things would be different" when plaintiff returned from leave supports this interpretation, as

3

did Maunz's demeanor at trial.

Thus, while temporal proximity alone is insufficient to establish the necessary causal connection between protected FMLA leave and plaintiff's termination, temporal proximity plus this additional evidence is sufficient to support the jury's verdict. *See Arban v. West Publ. Corp.*, 345 F.3d 390, 403 (6th Cir. 2003) (evidence that plaintiff received unfavorable performance review after taking FMLA leave, coupled with evidence of manager's remarks and other facts, held sufficient to support FMLA retaliation verdict).

### 2.  **Plaintiff's Closing Argument**

Next, defendant has shown nothing in plaintiff's counsel's closing that would justify disturbing the jury's verdict.

Defendant complains that plaintiff's counsel impermissibly invoked local prejudice by referring to Sears's "special Department" of Human Resources in Chicago, Illinois.  However, it was defendant who first referred to this special department in its opening statement.  (Doc. #82 at 17)  There, defendant emphasized the "special" nature of this group in an apparent effort to convey the importance which the company placed on termination decisions involving long-term employees.[1]

---

[1]Defense counsel stated in opening: "And in fact, when a person with as many years of service as Mr. Young has is [*sic*] recommended to be removed from the company, there is a special Department of Human Resources that has been created by Sears solely for the reason that they review those situations."  (Doc.

4

The fact that this "special" department was located at
Sears's headquarters outside of Chicago was first stated merely
by way of background in plaintiff's cross examination of John
Hargrove, the Human Resources Project Manager who worked in the
special unit and who reviewed and approved plaintiff's
termination.  (Doc. #83, Trial Transcript at 34)  Plaintiff's
counsel cross examined Hargrove regarding the role of this
"special unit" in order to convey the theme that, despite the
alleged importance that the company placed on termination
decisions involving long-term employees, Hargrove approved
Maunz's recommendation to terminate plaintiff's employment in a
cursory fashion, based on incomplete information.  (*Id.* at 37-55)
This theme was repeated in plaintiff's closing argument.  (Doc.
#73 at 14-15)  The fact that this "special" HR unit was located
in Chicago was stated simply as context and was not unduly
emphasized.[2]

The other aspects of plaintiff's counsel's closing argument
about which defendant complains (body language, pointing, etc.),

---

#82 at 17)

[2]Plaintiff's counsel argued: "If you'll remember the opening
statement in which they said, this was a gut-wrenching decision,
we took all sorts of caution, we sent it up to the special unit
in Chicago to make sure that there was nothing illegal that went
on here.  . . .  All they did in Chicago was ensure that the
paperwork was in place.  They talked to no one.  They looked at
no documents."  (*Id.*)

while no doubt irritating to opposing counsel in such situations, did not create the type of prejudice that would warrant disturbing the jury's verdict.

### 3.  <u>Judicial Partiality</u>

Plaintiff also challenges a remark that the court made in sustaining a relevancy objection by defense counsel:

> Q.  Was one of the issues Mr. Maunz raised to you some sort of issue about presentation?
>
> A.  Yes, sir.
>
> Q.  And that was a negative, right, supposedly?
>
> A.  Oh, absolutely.
>
> Q.  Who's in charge — as the store manager, who do you think's in charge of presentation of the entire store?
>
> A.  Ultimately, the store manager is in charge of everything at the store.
>
> Q.  Would that include, for example, the sign on the side of the building?  When people are trying to find Sears, do you think it would be a good idea that that sign be in good presentation style?
>
> A.  Sure.
>
> Q.  For example, if the sign on the side of the building at Sears is missing an R and at nighttime you can drive by and see S-E-A-S —
>
>> Ms. Gallion:    Objection.
>>
>> **The Court:        Objection sustained.  Stick to the issues.  You were doing good.**
>>
>> Mr. Freking:    All right.  Thank you, Your Honor.

(Doc. #83, Trial Transcript at 55) (emphasis added).

The court was, in effect, cautioning counsel not to stray

6

from the main issues.  Nonetheless, when defense counsel objected
to this remark during the lunch break (*id.* at 84), the court
explained to the jury what it had been meant by its remark and
instructed it that the court had no bias for either side and no
opinion about how the case should be decided:

> THE COURT:    Okay.  Good afternoon, ladies and gentlemen.
> Please be seated.  I want to clarify a remark I made before
> the recess where I said, told an attorney to stick to the
> issue and said he's done a good job so far.  Both sides have
> done a good job so far in sticking to the issue up to that
> point, and now we've got them back again following the
> guidelines of sticking to the issue.
>
> Just to be doubly certain, I have no opinion about this
> case, and if you thought I did, you should ignore it,
> because the Constitution says you are to be the judges of
> the facts of this case, including the intent of the people
> involved.

(*Id.* at 91).

Viewed in this context, the court does not believe that this
lone remark created a reasonable risk of the perception of
judicial partiality.

### 4.   Jury Instructions

Defendant next argues that the jury was incorrectly
instructed and that the instructions were too brief.

Jury instructions are reviewed as a whole to determine
whether they adequately submitted the issues and applicable law
to the jury.  *Arban*, 345 F.3d at 404 (citation omitted).  "A
party is not entitled to a new trial based upon alleged
deficiencies in the jury instructions unless the instructions,

*taken as a whole*, are misleading or give an inadequate understanding of the law." *Id.*

Further, it is well established that the trial court "enjoys wide latitude in fashioning instructions." 9 James Wm. Moore, *Moore's Federal Practice* § 51.20[1][b] (3d ed. 2002 & Supp. 2007). As the Sixth Circuit has stated in considering a challenge to instructions: "[T]he federal district court had discretion to instruct the jury in any manner it deemed appropriate, as long as it correctly stated [the] substantive law, instructed on the issues relevant to the case at hand, and did not mislead the jury." *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000).

Following Kentucky practice, this court generally gives "bare-bones" instructions which set forth the questions that the jury must answer but which do not go into great detail. This method of instructing the jury has been approved by the Sixth Circuit. *See id.* The learned authors of *Moore's Federal Practice* also commend instructions that are as brief and simple as possible:

> The purpose of jury instructions is to afford the jury a clear and succinct statement of the law applicable to the facts of the case. Accordingly, the trial court's instructions should avoid legalistic terms and should present controlling principles in a clear, concise, and forthright manner. Also to be avoided are rambling, discursive, lengthy oral charges. In general, a charge to a jury in a civil case should not take more than 20 or 30 minutes.

9 James Wm. Moore, *Moore's Federal Practice* § 51.20[1][a] (3d ed. 2002 & Supp. 2007).

Defendant does not actually contend that any instruction that the court *did* give was an incorrect statement of the law or otherwise erroneous, or that any jury issue was not covered. Instead, defendant argues that the instructions given were too short and that its "proposed instructions would have more fully and accurately instructed the jury." (Doc. #65 at 4)  *See also id.* at 7 ("Had the jury been more adequately instructed . . .").

The court concludes that the instructions given, both written and oral, were adequate to inform the jury of the ultimate issue before them: Whether defendant, in deciding to terminate plaintiff's employment, was motivated by the fact that plaintiff had taken protected FMLA leave, and whether he would have been fired even if he had not taken the leave.

The introduction section of the instructions explained that the FMLA makes it illegal for an employer to terminate someone because he has exercised his FMLA rights, and it explained that plaintiff had to prove that such illegal motive was a motivating factor in defendant's decision.  The special verdict form given by the court also set forth the necessary questions for the jury to decide.

Defendant argues that the bare-bones method is appropriate only where the case is before the court on diversity jurisdiction

and that it is improper where plaintiff's claims arise under federal law.  This argument might carry weight if the defendant were asserting that the court, in utilizing the bare bones method employed by Kentucky courts, had thereby misstated the substantive law or erroneously instructed on a theory of state law recovery different from plaintiff's federal claim.  Such is not the case, however.

At oral argument on these motions, the court inquired of defense counsel if there was any issue on which no instructions had been given at all which defendant contended should have been covered.  (Doc. #87, Transcript at 3)  As is reflected in the transcript, counsel mentioned several issues but subsequently conceded that they had been covered at one point or another, either in the court's oral instructions or in the written instructions and special verdict form.[3]

The court thus concludes that the jury instructions adequately submitted the relevant issues to the jury.

### 5.  **Jury Questions**

Defendant also argues that questions posed by the jury during deliberations evidence the type of confusion that would justify overturning the verdict.  As will be seen, the court does

---

[3]Counsel did, in one word, mention "pretext," but she did not elaborate on this comment.  (Transcript at 6)  Moreover, all parties agreed that this was a mixed-motive case, and thus the concept of pretext was irrelevant.

10

not agree, but a detailed discussion of the sequence of these
events is warranted.

The jury retired to deliberate at approximately 11:25 a.m.
on Wednesday, April 4, 2007, the third day of trial.  (Doc. #73,
Trial Transcript at 45)  At approximately 3:25 p.m., the jury
sent out a question concerning Question 2 of the special
interrogatories.  That interrogatory read:

> If you answered any part of Question 1 "yes," has the
> defendant proved by a preponderance of the evidence that it
> would have terminated plaintiff's employment anyway,
> regardless of that particular factor?"

(Doc. #60, Jury Instructions at 6)

The jury asked:

> Would you please clarify question #2 page 5?  Does the
> question call for an hypothetical answer?

(Doc. #59 at 1)

After conferring with counsel, the court brought the jury in
and instructed as follows:

> THE COURT: Good afternoon again, ladies and gentlemen.
> Please be seated.  I'll try to answer your question.  Any
> question that you have, unless it's of a rather routine
> nature, we have to have the lawyers in to discuss that, how
> to answer it.  Your question is, "Would you please clarify
> Question Number 2, page 5.  Does the question call for a
> hypothetical answer?"  I can't just answer it yes or no.
>
> Let me tell you, rather, what the question is driving at.
> All right.  Don't indicate now how your answers to any of
> these questions has been, but the first question says, "Has
> the plaintiff proved by a preponderance of the evidence that
> either of the following was a motivating factor that made a
> difference in the defendant's decision to terminate his
> employment?"  And then you have a question regarding the age
> and a question regarding FMLA retaliation.

11

Let's say that you answered one of those yes.  If you didn't answer one of those yes, you shouldn't get to Question 2, but let's say that you have answered one of those yes.

Okay.  Now, the second question, what it's trying to determine is if there was more than one reason for his termination; one was a valid reason, he wasn't meeting his goals, and the other was because of one of those prohibited reasons.  Would he have been discharged for the valid reason, even though, if there had been no prohibited reason?  Do you get what I'm saying?

In other words, there might have been -- a person can have two motives for doing something; and if one is valid and one was illegal, would he have been discharged for the valid reasons even if the illegal reasons had never occurred.  Does that make sense?  I think it makes sense once you think about it.  And the burden on that second part is on the defendant [] to prove they would have done it anyway.

Okay.  Some are nodding.  Everybody think they understand it?  Okay.  Then I'll ask you to go back and continue with your deliberation.  **Any objection to what I said?**

**MS. GALLION: No, sir.**

**MR. FREKING: No, Your Honor.**

(Doc. #74, Transcript at 3-5) (emphasis added)

At approximately 5:10 p.m., the jury sent out another question regarding the same interrogatory.  This question asked:

Question #2 page 5

The word "would" is being understood by some jurors to read "should."  Which is correct?

If we understand "would" to have its usual meaning, the question would have to be answered "Yes" as it is obvious that Mr. Young was terminated.  If we are to understand the word "would" to mean "should" then is it the jury's responsibility to determine if Mr. Young's termination was justified?

(Doc. 59 at 2)

12

Given the late hour, the court excused the jury for the day and told them that the court would give them a revised Question 2 in the morning.  (Doc. #74 at 7-8)  The court then gave copies of the jury's question to counsel.

The following morning, April 5, 2007, the court held an in-chambers conference with counsel to discuss the court's proposed revision of Question 2.  In pertinent part with respect to the FMLA, the question as revised by the court stated:

> If you found retaliation for taking FMLA leave for the knee replacement was a motivating factor in plaintiff's discharge, please answer the following question: Has defendant proved by a preponderance of the evidence that plaintiff would have been discharged, even if he had not taken the FMLA leave?

(Doc. #60 at 5)

Following some discussion, defense counsel indicated that defendant did not object to the revised question proposed by the court.  (Doc. #68 at 6)  Defendant did, however, request that the court give a supplemental "business judgment" instruction on the grounds that the jury's questions seemed to indicate that they were questioning the wisdom of Sears's decision.  (*Id.* at 7-8)  The court agreed to do so.

At approximately 9:30 a.m., the jury was called back into the courtroom.  The court explained that, based on their questions of the previous day, the court had decided to revise Question 2 to make it clearer.  (Doc. #69 at 2)  The court read the revised question to the jury and instructed as follows:

13

In this case, again let me remind you, a preponderance of
the evidence means it's more probable than not.  Scale tips
a little bit in the direction, in Question 2, the defendant
has to make it tip in his direction with the evidence it
puts in there for you to answer this question yes.  Okay?
So keep that in mind.

**Also keep in mind what the Court said to you in the
introduction about the business judgment rule.  That's what
it's called.  It is not your job to determine whether it was
justified or you would have done it or you think it's fair,
but whether it was done for illegal reasons.  It's only
actionable if it was discrimination.  So you might think
their rules are harsh, or unfair, or too hard on the
employee.  But if there are the same rules for everybody,
then it's not discrimination.**

(Doc. #69 at 3-4) (emphasis added)

The court then again read to the jury the business judgment
rule as set forth in the written instructions.

The court gave the jury revised Question 2 in writing to be
substituted for the original Question 2.  At approximately 9:36
a.m., the again retired to deliberate.

Shortly after 3:00 p.m., the jury sent out a note stating
that they were divided 9 to 1 on Question 2.  (Doc. #59 at 3)
The court conferred with counsel, and all agreed that the court
should give the jury an *Allen* charge and allow them an additional
brief period to deliberate.  (Doc. #69 at 5-10)  Counsel agreed
that if the jury was still hung after this additional period of
deliberations, then the parties would agree to accept a non-
unanimous answer on Question 2.  (*Id.* at 9-10)

The court called the jury back into the courtroom.  The

14

court asked whether anyone was still confused about the meaning of Question 2, and none responded that they were.  (*Id.* at 11) The court then gave the *Allen* charge and sent the jury back to deliberate at approximately 3:29 p.m.  (*Id.* at 10-13)

Upon further discussion, counsel agreed that if the jury did not return within half an hour, both parties would agree to accept a verdict of 8 out of 10 jurors on Question 2.  (*Id.* at 14-16)  At approximately 4:04 p.m., the court called the jury back into the courtroom and informed them that the parties had agreed to accept a verdict of 8 of the jurors on Question 2. (*Id.* at 18-19)  With this direction, the jury retired, and an hour later returned its verdict.  (*Id.* at 20)

These proceedings do not suggest that the jury's verdict was rendered based on confusion.  While defendant argues that the jury's questions show that they were improperly considering the wisdom of defendant's decision to terminate plaintiff's employment, the record demonstrates that the court instructed the jury on the "business judgment" rule several times.  The court instructed on business judgment in the written instructions, orally prior to closing arguments (Doc. #73 at 9), and again orally at length in conjunction with revised Question 2.  (Doc. #69 at 3-5)

In particular, when the court presented revised Question 2 to the jury, it specifically directed their attention to the

15

business judgment rule in connection with the issue addressed on the interrogatory, telling them: "It is not your job to determine whether it was justified or you would have done it or you think it's fair, but whether it was done for illegal reasons." (Doc. #69 at 3)  At this time, the court also reread the business judgment rule as set forth in the written instructions.  These supplemental instructions thus were "responsive to the jury's specific concern," and sufficient to "refocus[] the jury on the instructions and evidence as a whole." *United States v. Davis*, Nos. 06-5073, 06-5074, 2007 WL 1790950, at *6 (6th Cir. June 22, 2007) (finding no abuse of discretion in trial court's response to jury question).

**B.   Motion to Reduce Damages**

The court will briefly address the damages issues here, as the transcript of oral argument on these motions contains an extensive discussion of the issues.  (Doc. #87, Transcript)

In sum, the back pay and front pay awards are excessive in light of the evidence of plaintiff's salary while employed by Sears and his salary in his new job.  After discussion with counsel and a review of the evidence, the court concludes that the amount of $85,000 adequately compensates plaintiff for the lost wages and benefits from the date of his termination to the date of the verdict.  The parties also agree that the sum of $3,000 will adequately compensate plaintiff for the value of

16

stock options lost as a result of his termination.  The back pay award will thus be reduced to $88,000.

As to front pay, the court concludes that the evidence reflects an approximate ongoing loss to plaintiff of $10,000 per year, and that an eight-year front pay period (through plaintiff's 62nd birthday) is reasonable.  The front pay award will thus be reduced to $80,000.

## C.   Liquidated Damages

The FMLA provides that the court shall award liquidated damages equal to the damages due to lost compensation plus interest.  29 U.S.C. § 2617(a)(1)(A)(iii).  However, if the employer proves that it acted in good faith and that it had reasonable grounds for believing that its act or omission was not a violation of the FMLA, then the court may, in its discretion, decline to award liquidated damages.  *Id.*

Here, the jury specifically found not only that defendant improperly retaliated against plaintiff for taking FMLA leave when it fired him, but it also found that defendant would not have fired plaintiff absent this improper motive.  As the Sixth Circuit noted in *Arban v. West Publ. Corp.*, 345 F.3d 390 (6th Cir. 2003), when "legal and equitable issues to be decided in the same case depend on common determinations of fact, such questions of fact are submitted to the jury, and the court in resolving the equitable issues is then bound by the jury's findings on them."

17

*Id.* at 408 (citation omitted).  Thus, a holding by the court that defendant acted in good faith in firing plaintiff would directly conflict with the jury's factual determinations that defendant knowingly retaliated against him, and such a holding would constitute an abuse of discretion.  *Id.*

The award of liquidated damages is also warranted under the court's objective view of the evidence adduced at trial.  As discussed previously, the evidence was susceptible to the reasonable -- indeed, strong -- inference that Maunz resented plaintiff's refusal to reschedule his knee surgery until after the busy holiday season, and that Maunz's treatment of plaintiff changed markedly when plaintiff returned from leave.  At that time, Maunz gave plaintiff a negative review, put him on a performance improvement plan, and recommended that he be fired six months later.  Maunz's demeanor at trial conveyed agitation which is consistent with this view of the evidence.

In addition, the cross examination of John Hargrove, defendant's Human Resources official who approved Maunz's recommendation, revealed that Hargrove did little to verify the information conveyed by Maunz.  In fact, Hargrove testified that he was not even aware that plaintiff had recently taken protected FMLA leave and that he "never evaluated Mr. Young's termination vis-a-vis the FMLA."  (Doc. #83 at 38)  Given the evidence that Hargrove's job as part of the special HR unit was to ensure that

18

managers such a Maunz did not commit FMLA retaliation or other discrimination, the evidence supports a conclusion that the very unit that existed to protect the rights of long-term employees such as plaintiff essentially "rubber stamped" Maunz's recommendation that plaintiff be fired.

Finally, at oral argument, defense counsel stated that while she did not believe that the FMLA had anything to do with plaintiffs' treatment, Sears's treatment of plaintiff was nonetheless questionable:

> I agree the case should have been settled. They didn't follow my advice. That's all I can say. It should have been settled.
>
> To me, it's just crystal clear what happened. I don't think this guy – I should say Mr. Young, not this guy. That's not nice, and I really do think you're a very nice man.
>
> I don't think he was discriminated against or retaliated against. I think the jury was mad, and I think you are too, at the way they treated a 34-year employee. **And it's just crystal clear to me, after 26 years in this business, that was not a smart move on Sears' part. It just doesn't smell right, it doesn't feel good, it's not principled, and I told them so. We're going to have a tough time selling this case.**

(Doc. #87 at 25-26) (emphasis added)

Given that the jury *did* find that the FMLA had something to do with plaintiff's termination -- indeed, that but for the leave he would not otherwise have been fired -- the nature of defendant's treatment of plaintiff wholly supports a finding that it did not act in good faith. The award of liquidated damages will not be disturbed.

19

Defense counsel attributes an improper motive -- anger at Sears's unprincipled but allegedly legal treatment of plaintiff -- to the court in ruling in plaintiff's favor on these issues. However, this accusation is unfounded.  As recited above, there is ample evidence of an impermissible retaliatory motive.  This evidence, which the court believes indicates Sears's true motive, is the true basis of the court's rulings.

D.   **Motions for Attorneys' Fees**

The court will take under submission the motions for attorneys' fees pending resolution of any appeal.

Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

1. Defendant's motion to reduce damages (Doc. #64) be, and is hereby, **GRANTED IN PART AND DENIED IN PART**, consistent with this opinion;

2.  Defendant's motion for judgment as a matter of law or, in the alternative, for a new trial (Doc. #65), be, and is hereby, **DENIED**;

3.  Plaintiff's motions for attorneys' fees (Doc. ##70, 86) be, and are hereby, **TAKEN UNDER SUBMISSION**; and

4.  An amended judgment consistent with this opinion shall enter concurrently herewith.

20

This 17th day of July, 2007.



**Signed By:**

_**William O. Bertelsman**_   *WOB*

**United States District Judge**

TIC: 45 min.